### THE ALFRED W. BOOTH. THE BARNEY DUMPER NO. 3.

#### BOOTH et al. v. MORAN.

(District Court, S. D. New York. June 4, 1903.)

1. COLLISION—TOW AND VESSEL AT ANCHOR—DEFECTIVE STEERING GEAR.

A collision between the first of two tows on a long hawser and an anchored scow *held* to have been due to the fault of the tow whose steering gear had been out of order for some days to the knowledge of the owners, by reason of which she failed to follow the tug when the latter changed her course to pass the anchored vessel, but sheered and brought about the collision, although both the tug and the rear tow passed at a safe distance. The tug *held* not in fault, having no knowledge that the tow was unmanageable and unable to follow, as she should have done.

In Admiralty. Suit for collision.

Robinson, Biddle & Ward, for libellants Hughes and others.

James J. Macklin, for claimants of No. 3 and the libellants against Moran.

Wing, Putnam & Burlingham, for claimant of the Alfred W. Booth.

ADAMS, District Judge. On the 13th day of October, 1901, about 7 o'clock in the morning, a collision occurred in New York Bay, between the Barney Dumper No. 3, in tow, on a long hawser, of the tug Alfred W. Booth, coming in from sea, and the scow No. 23, lying alongside of the dredge Fin McCool, which was at anchor about 800 feet off 79th or 80th Street, South Brooklyn. Both the dumper and the scow were injured.

Hughes et al., the owners of No. 23, filed a libel against the Booth, alleging that she was in fault for the collision, in failing to keep a proper lookout and in not avoiding the scow.

Moran, the claimant of the tug, filed an answer, alleging that she passed the dredge and scow about 300 feet off, and had the tow followed, there could have been no collision but instead of doing so, No. 3 took a rank sheer to port, which was caused by her steering gear being out of order, and brought about the collision without any fault on the part of the tug. Moran also filed a petition, under Rule 59, to bring in No. 3.

Booth et al., claimants of No. 3, filed answers to the libel and petition, admitting that the steering gear of No. 3 was out of order, but alleging that it had become so through bad weather on the return voyage from sea and that the collision was not due to such fact but the fault of the tug in suddenly changing the course she was on to pass outside of the dredge and scow, to one between them and the Brooklyn shore, which brought about the collision, rendering it inevitable as far as No. 3 was concerned.

Booth et al. also filed a libel against Moran to recover the damages sustained by No. 3, alleging in substance the same facts concerning the collision, and that those in charge of the Booth were negligent in changing her course and in passing too close to the scow.

Moran filed an answer to the libel in personam, denying any negligence on the part of those on the Booth and reiterating the allegations contained in his answer to the libel against the Booth.

The testimony shows that the Booth had two light dumpers in tow, the No. 3 on a hawser about 900 feet long, and No. 10 tailed on to No. 3, on a hawser about 500 feet long. The tow was bound to Clinton Street, Brooklyn, and the tug, when near the scow, shaped her course to go to the eastward. The claim of those charging the tug with fault is, that she was headed directly at the scow and suddenly changed her course to the starboard just before reaching it and passed only about 30 feet off. No doubt the distance between her and the scow was not nearly as great as claimed by the tug, some 300 feet, but upon the evidence, I conclude that although she probably changed her course when she was near the scow, she did so soon enough and passed a sufficient distance away from the scow, to give the dumpers ample margin to follow her safely. No. 10 did so, but No. 3 sheered to port and brought about the collision. The tow had been somewhat on the port side of the course of the tug after passing Fort Hamilton and when the vicinity of the dredge was reached, the wheelsman of No. 10 ported to follow the tug. Ordinarily a boat situated as No. 3 was, and where there is plenty of room, does not have to steer, as her movements are sufficiently controlled by the tug and the rear boat, but she is supplied with steering apparatus and the tug is justified in assuming that it is in good order and will be properly used, if necessary, to fulfil the tow's duty to follow the course of the tug. The effect of the No. 10 porting was to throw No. 3's stern to the starboard, which gave her a heading to the port. This should have been resisted and a heading given her to the starboard by a port helm, but the steering apparatus was so much out of order that she practically had no port helm and the collision resulted. The claim on the part of No. 3 that the steering gear got out of order upon this trip through heavy weather is not sustained by the evidence, which

shows that it had been so for several days and that its condition was known to the owners but was not communicated in any way to the tug, which was proceeding on a theory that the tow would observe the usual duty of a tow under such circumstances. Some sheering on the part of No. 3 had been noticed by the pilot of the tug on the way up, but it was naturally attributed by him to neglect on the part of the wheelsman to follow closely where there was plenty of room, and he had no reason to believe if more accuracy should be needed, that the wheelsman of No. 3 would be unable to respond to the requirements of her duty.

Although I am not entirely satisfied that the tug observed all the caution she should have in view of the course she was probably pursuing, there is testimony to sustain the claim that she was ordinarily careful, and inasmuch as the primary fault of No. 3 is so plainly established and sufficiently accounts for the collision, on a question of apportionment, the tug is entitled to have the doubt with respect to a contributing fault on her part, resolved in her favor.

Decree for the libellants Hughes et al. against No. 3. Their libel as to the Booth is dismissed. The petition of Moran against No. 3 is sustained. The libel of Booth et al. against Moran is dismissed.